UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA O'NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 07 C 4788 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of the City of Chicago ("City") for summary judgment on Brenda O'Neal ("O'Neal")'s complaint. For the following reasons, the motion is granted.

## BACKGROUND

O'Neal is a police officer who began her career with the Chicago Police Department in 1991. The facts comprising the Background are drawn from the City's 56.1(A)(3) statement of undisputed facts and O'Neal's 56.1(B)(3) statement of additional facts. In 2001, the City promoted her to the position of sergeant. By February 2002, she was assigned to serve as administrative assistant to Commander Wayne Wiberg ("Wiberg") in the Narcotics and Gangs Investigations Section ("Narcotics"). After having worked in Narcotics for a short while, O'Neal was

transferred to the position of beat sergeant. On May 31, 2002, she filed a grievance on the basis that her transfer from Narcotics was without just cause. Perceiving her transfer as an act of discrimination, O'Neal additionally filed a race and gender discrimination suit against the City on November 20, 2002. At the close of all discovery, the district court granted the City's motion for summary judgment and the Seventh Circuit affirmed. *See O'Neal v. City of Chicago*, 392 F.3d 909 (7th Cir. 2004).

**I. Transfer Activity Subsequent to the 2002 Lawsuit**

By August 2003, O'Neal settled the May 2002 grievance on the condition that she would be transferred back to Narcotics. Throughout most of her career, Sergeant Dana Starks ("Starks") supervised, transferred, and detailed O'Neal. In September, she was reassigned to Narcotics and again served as administrative assistant to Wiberg. O'Neal made no objections to this transfer. Later that year, the City transferred Wiberg to a different unit and he requested that O'Neal be transferred with him; accordingly, O'Neal was detailed[1] and continued to work for Wiberg. O'Neal points out that the move was involuntary and she refused to sign a request form indicating that she

---

[1] Within the Chicago Police Department, a transfer means an employee is assigned to a new unit. A detail is when an employee works in a new unit, but is not assigned to the new unit. A detail may be cancelled at any time.

requested a transfer.² Starks kept O'Neal assigned to Narcotics per her settlement and only detailed her when she moved with Wiberg.

The City transferred Wiberg to a different unit. Since Wiberg's new location was geographically undesirable to O'Neal, she did not request to be transferred. Instead, Starks detailed her to Patrol Administration in which O'Neal was responsible for the same duties as was required of her when she worked for Wiberg.

In May 2005, the City transferred O'Neal to Patrol Administration, which caused her to complain to her union about the transfer. So in July, the City transferred her back to Narcotics at her request and immediately detailed her back to Patrol Administration.

When Starks detailed O'Neal to Patrol Administration, she and her staff did not change location. It was considered an administrative move on paper. At this point, she was the only sergeant working in this unit. After Starks perceived that O'Neal disobeyed an order, he transferred her to a district to work as an administrative sergeant in which sergeants earn the same salary and benefits. After a week, however, O'Neal complained of the transfer and demanded to be reassigned to Narcotics; the City promptly transferred her back to Narcotics. Because there was no need for an administrative sergeant in Narcotics, the City reassigned O'Neal to Asset Forfeiture.

---

²Deputy Chief John Risley replaced Wiberg in Narcotics and personally staffed the Narcotics office to handle paperwork.

In this new location, O'Neal remained a sergeant but was required to learn and perform different duties.

## II. Transfers After September 1, 2006

In November 2006, O'Neal was detailed to Vice Control and worked as a relief sergeant. O'Neal learned new responsibilities and worked evenings, which she perceives as having some effect on her preparation for the Lieutenant's exam. On November 20, she filed a grievance claiming that the City violated the August 2003 settlement providing she would remain in Narcotics. While working in Vice Control, O'Neal was assigned her own team and reported to Lieutenant Paul Kusinski ("Kusinski"). She complains that Kusinski discriminated and retaliated against her, which created intolerable working conditions. On May 1, 2007, O'Neal filed a complaint of retaliation against Kusinski. On May 24, Kusinski had O'Neal submit to a counseling session. On June 7, Kusinski recommended that O'Neal be transferred out of Vice Control. He based his recommendation on O'Neal's administrative mistakes, inattention to detail, confrontational attitude, borderline insubordinate comments, and failure to safely conduct street operations. Following this sequence of events, she was transferred to the Third District in the Patrol Division.

As evidence of her allegedly unequal treatment, O'Neal proffers two comparative male sergeants whom she perceives Kusinski treated more favorably. Kusinski

supervised sergeants Alfonso Drew and Ralph Craig, who were also assigned to Vice teams. Neither Drew nor Craig was regarded by Kusinski as having complained about the terms of their employment and neither was transferred.

**III. The 2007 Lawsuit**

On June 28, 2007, O'Neal filed a discrimination charge against the City with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex and retaliation in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e *et seq*. The substance of O'Neal's complaint is predicated on allegations that the City repeatedly transferred or detailed her to various undesired units in retaliation for her 2002 discrimination suit. The City brings the instant motion for summary judgment on the basis that there is no genuine issue of material fact that it discriminated against O'Neal or detailed her in retaliation for engaging in a protected activity.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must identify the specific portions of the total record, which it believes establishes the absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.*, 477 U.S. at 325, 106 S. Ct. at 2554. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but—"by affidavits or as otherwise provided for in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). With these principles in mind, we turn to the City's motion.

# DISCUSSION

As a threshold matter, the City asserts that recovery for events arising prior to September 1, 2006, is time barred. A plaintiff's allegations that predate her EEOC charge by more than 300 days are considered untimely. *See* 42 U.S.C. § 2000e-5(e)(1)(2000). The statute requires that a plaintiff file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct. *Bullard v. Sercon Corp.*, 846 F.2d 463, 467-68 (7th Cir. 1988). It is undisputed that O'Neal filed her EEOC charge on June 28, 2007. As such, any allegedly violative activity occurring before September 1, 2006, is time barred.[3] Therefore, the November 9, 2006, detail to Vice Control and the June 2007 transfer from Vice Control to the Third District are the pertinent reassignments for purposes of summary judgment.

Since we have already decided that there are only two actionable transfers, we address whether these two transfers constitute a continuing violation. O'Neal characterizes the City's conduct as a continuing violation and that the court should consider the prior transfers in the aggregate in deciding whether the City's treatment was adverse. On November 20, 2006, O'Neal filed a complaint for being transferred to Vice Control and on May 1, 2007, she complained, but this time about Kusinski's

---

[3]On November 21, 2007, the court denied the City's motion to dismiss the untimely allegations because the details of prior events supply context for the asserted claims.

treatment. A continuing violation is occasioned by continuing unlawful acts. *See Diliberti v. United States*, 817 F.2d 1259, 1264 (7th Cir. 1987). The fact that nearly seven months passed and the complaints were for different reasons does not warrant a continuing violation; rather, they are discrete and isolated acts regarded as individual violations. *See Garrison v. Burke*, 165 F.3d 565, 570 (7th Cir. 1999).

Even if we were to examine each reassignment that occurred prior to the September 1, 2006, cut-off date, we would conclude that each was a discrete instance that carried an independent reason. Take, for example, O'Neal's transfer with Wiberg. The City transferred her because of her relationship to Wiberg as his administrative assistant. Although O'Neal maintains that she did not sign a personal request form, there is no evidence that she refused to accompany Wiberg from Narcotics. The City adduces proof of an independent basis each time it reassigned O'Neal; therefore, the transfers are properly considered individual violations instead of continuing violations.

**I. Gender Discrimination**

In Count II of her complaint, O'Neal claims that the City discriminated against her on the basis of gender. An employee alleging employment discrimination must show incidents of illegal discrimination through direct proof, or more commonly, indirect proof. *See Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003). O'Neal does not have any direct evidence of discrimination. She elects to proceed

under the indirect method of proof, which is a burden-shifting analysis where the plaintiff bears the initial burden of proving the *prima facie* elements of the claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06, 93 S. Ct. 1817, 1823-26 (1973). Once the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Szymanski v. County of Cook*, 2002 U.S. Dist. LEXIS 1663, at *16 (N.D. Ill. Jan. 28, 2002). If the employer satisfies that burden, then the burden shifts back to the plaintiff to persuade the trier of fact either directly that a discriminatory reason more likely motivated the action or indirectly that the employer's articulated reason is implausible and serves as a mere pretext for intentional discrimination. *Id.*

The City argues that O'Neal cannot sustain a *prima facie* case of gender discrimination under the indirect method of proof. To survive summary judgment, the Seventh Circuit has held that a plaintiff must establish the following: (1) membership in a protected class; (2) job performance according to the defendant's legitimate expectations; (3) an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by the decision makers. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). If a plaintiff

fails to establish any one of the four factors of the *prima facie* case, the court generally need not proceed any further and summary judgment is entered for the employer. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002).

There is no dispute that O'Neal belongs to a protected class; however, the City asserts that she cannot prove the second, third, or fourth elements of her *prima facie* case. Specifically, the City contends that she did not satisfy its legitimate job expectations while working in Vice Control in that she made administrative mistakes, was inattentive to detail, possessed a confrontational attitude, made borderline insubordinate comments, and failed to show an ability to conduct street operations. O'Neal does not dispute that she made administrative mistakes. With respect to the other reported shortcomings, she does not dispute that they were present but argues they occurred because her work was disrupted by the treatment she received from decision makers like Kusinski. According to O'Neal, she was harassed, confronted, and humiliated by Kusinski, which caused her anxiety and detrimentally affected her ability to advance her career.

When assessing whether a plaintiff has met legitimate job expectations, the Seventh Circuit has held that the proper inquiry mandates "looking at [the employee's] job performance through the eyes of her supervisors at the time of the alleged adverse action." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). The City

maintains that it transferred O'Neal because of unsatisfactory performance in her role as supervisor. In response to the City's assertion, O'Neal argues that she need not establish that she met the City's legitimate job expectations because those expectations were applied against her in a discriminatory way. *See Peele*, 288 F.3d at 329.

Instead of offering contradictory evidence to the City's contention that she failed to meet legitimate expectations, O'Neal identifies her 99-100% efficiency ratings throughout her 17-year career and points out that Kusinski complemented her work performance prior to filing her May 1, 2007, complaint. With regard to whether or not she exhibited a confrontational attitude, O'Neal asserts that she was harassed and degraded by Kusinski. Such evidence does not go towards whether O'Neal was meeting the City's expectations of its sergeants; rather, it is O'Neal's justification for not meeting the City's expectations. She does not provide any evidence to rebut the City's assertion that her inattention to detail and supervision flaws are not a valid reason for transfer from Vice Control. Without evidence to the contrary of the City's contentions, summary judgment is appropriate as to O'Neal's gender discrimination claim. The court finds that O'Neal fails to establish the second prong under the indirect method. Additionally, as is more fully discussed in the next section of this opinion, we find that no adverse employment action was visited upon O'Neal by virtue of any of the City's actions.

## II. Retaliation

Next, the City moves for summary judgment on O'Neal's retaliation claim on the basis that she does not establish a *prima facie* case under the direct method of proof. To avoid summary judgment under the direct method, the Seventh Circuit requires a plaintiff to demonstrate that she engaged in a protected activity, suffered a materially adverse employment action, and establish a causal connection between the protected activity and the adverse action. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

The City does not challenge that O'Neal's 2002 discrimination suit was statutorily protected. Rather, it moves for summary judgment on the grounds that her transfer from Vice Control to Third District does not qualify as an adverse employment action and there is no causal connection between the protected activity and the alleged adverse action.

The City maintains that the transfers to and from Vice Control were not adverse. An adverse employment action must materially alter the terms and conditions of a plaintiff's employment. *Whitaker v. N. Illinois Univ.*, 424 F.3d 640, 647 (7th Cir. 2005). Generally speaking, such actions include reduction in pay or monetary benefits but may include other forms of adverse action. *Id.* at 647-48. The City asserts that when it transferred O'Neal to a different unit she retained the rank of sergeant and did

not suffer any decrease in pay rate or benefits. However, O'Neal claims that the transfers were adverse due to the harmful effect they inflicted on her career. She argues that in the aggregate, she has endured a multitude of transfers requiring her to work with new supervisors with new hours, manage new responsibilities, and report to different locations. Furthermore, she asserts that the constant transfers inhibited her ability to sufficiently prepare for the lieutenant's examination.

Lateral transfers not involving demotions are not actionable. *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002). A lateral job transfer must show something more than ordinary difficulties associated with a job transfer. *See O'Neal*, 392 F.3d at 913; *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000) ("A materially adverse change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."). Taking the time-barred transfers occurring prior to September 1, 2006, it is undisputed that O'Neal maintained the same job responsibilities of a sergeant during each reassignment. Accordingly, there is no evidence to establish that she was demoted prior to September 1. Of the actionable reassignments occurring after September 1, the City contends that transferring O'Neal to Vice Control and to the Third District required her to perform substantially similar duties as would be required in her preferred position with Narcotics. Her contention that she had to endure working with new supervisors and

managing new responsibilities are ordinary difficulties associated with any new job. Moreover, O'Neal does not offer evidence that any of these new duties "significantly reduce[d] the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted." *O'Neal*, 392 F.3d at 911.

In *Herrnreiter*, the court found that a transfer from the position of investigator to auditor was not actionable because the jobs "were equivalent other than idiosyncratic terms." *Herrnreiter*, 315 F.3d at 745. Here, the City asserts that O'Neal retained the same position as sergeant in both Vice Control and Third District and that the two locations are merely idiosyncratic terms and not a demotion. Furthermore, O'Neal retained the same rank, pay rate, and benefits.

Challenged conduct is only actionable if a plaintiff can establish that it would dissuade a reasonable employee from filing a charge of discrimination. *Whitaker*, 424 F.3d at 648. O'Neal does not contend that she sustained any monetary injury that would dissuade a reasonable employee from filing a charge of discrimination. When she was transferred from Vice Control to the Third District in the Patrol Division, she maintained the same responsibilities. While she points to what she perceives as an overwhelming amount of transfers and details since 2004, only those that fall within the 300-day statute of limitations can be considered. O'Neal relies heavily on

reassignments that the court has already determined are untimely for purposes of summary judgment.

Of the relevant transfers, it is undisputed that the transfer to and from Vice Control did not result in a reduction in pay or benefits. Moreover, the City made sure that it transferred O'Neal to a position where she was not required to forfeit her rank as sergeant. Without any evidence refuting the City's assertion that O'Neal did not suffer an adverse action, the court finds that the City is entitled to summary judgment on the retaliation count of O'Neal's complaint.

## CONCLUSION

Based on the foregoing, the City's motion for summary judgment is granted.

      *Charles P. Kocoras*      
Charles P. Kocoras
United States District Judge

Dated:   February 17, 2009